UNITED STATES *v.* F. W. MYERS & Co., INC. (No. 3986)[1]

United States Court of Customs and Patent Appeals, November 2, 1936

*Joseph R. Jackson,* Assistant Attorney General (*Charles D. Lawrence,* Special Assistant to the Attorney General, and *John J. McDermott,* special attorney, of counsel), for the United States.

*Allan R. Brown* and *Fred J. Carter* for appellee.

[Oral argument October 6, 1936, by Mr. Lawrence and Mr. Brown]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Certain spruce lumber was entered at the port of Port Huron under the Tariff Act of 1930, and was assessed for duty by the collector under paragraph 401 thereof at $1 per thousand feet, board measure, and at $3 per thousand feet, also board measure, under section 601 (c) (6) of the Revenue Act of 1932 (47 Stat. 169), no deduction for planing, tonguing, or grooving being made in either instance. The assessment of duty by the collector was questioned by two protests, which were consolidated for the purposes of trial before the United States Customs Court. The facts in the case were settled by the stipulation of counsel, which is as follows, omitting the formal part:

1. That the merchandise covered by protest 629185–G was imported at Port Huron and entered under Entry A–265, Nov. 1, 1932, and consisted of certain spruce lumber dressed or planed on one side only.

---

[1] T. D. 48640.

2. That the said lumber was invoiced on the basis of the actual board measure content thereof in its dressed condition as imported into the United States.

3. That the actual board measure content of the aforesaid lumber in its dressed condition as imported was 20,690 feet, board measure, as reported by the United States weigher, the unit of board measure being one foot length by one foot width by one inch thickness.

4. That in determining the board measure content of the aforesaid lumber in its rough condition before planing and dressing, the Collector added to the actual thickness one-eighth of an inch for each dressed surface, as reported by the United States weigher, and assessed duty under Par. 401 of the Tariff Act of 1930 and under Section 601 (c) (6) of the Revenue Act of 1932 at the rate of $1 and $3 per thousand feet, board measure, respectively, on 26,850 feet, board measure, as reported by the United States weigher.

5. That 26,850 feet board measure, was the correct board measure content of said lumber in its rough condition before planing or dressing.

6. That the merchandise covered by protest 635261–G was imported at Port Huron and entered under Entry A–420, Dec. 20, 1932, and consisted of certain dressed spruce lumber dressed or planed on one side and on one edge.

7. That said lumber was invoiced on the basis of the linear feet in said lumber.

8. That the actual board measure content of the lumber covered by the aforesaid protest in its dressed condition as imported was 22,168 feet, board measure, as reported by the United States weigher, the unit of board measure being one foot length by one foot width by one inch thickness.

9. That in determining the content of the said lumber in its rough condition before planing or dressing the Collector added to the actual thickness one-eighth of an inch for each dressed surface, as reported by the United States weigher, and assessed duty under Par. 401 of the Tariff Act of 1930 and under Section 601 (c) (6) of the Revenue Act of 1932 at the rate of $1 and $3 per thousand feet, board measure, respectively, on 27,038 feet board measure, as reported by the United States weigher.

10. That 27,038 feet, board measure, was the correct board measure content of said lumber in its rough condition before planing or dressing.

The United States Customs Court came to the conclusion that the protest of the importer should be sustained in each instance, and held that the lumber in question was dutiable under the provisions of said paragraph 401, as assessed by the collector, with no deduction on account of planing, tonguing, and grooving, and that it was also assessable for duty under said section 601 of said revenue act at its correct board measure only.

The Government has appealed and claims here that the duty under said section 601 should be assessed and collected upon the same basis, and at the same rate, as specified in said paragraph 401, without any deduction on account of planing, tonguing, and grooving. The argument of Government counsel is based largely on the language of said section 601 of said revenue act in subsection (b) thereof, contending that that provision makes applicable to the lumber here involved the provision of said paragraph 401, namely, that there shall be no deduction in measurement on account of planing, tonguing, and grooving. The importer contends that it is entitled to a rate to be computed upon the basis of board measure, under said section 601.

The relevant provisions of law, on account of their length, are given in a footnote below.[1]

For a long period it has been understood, and has been the practice, to apply to the meaning of the term "board measure" a computation of the actual "inch measure" of the lumber as imported; that is, to multiply the width by the thickness and by the length and compute the measurement of the lumber by feet and inches. If a board were one foot wide and one foot long and one-half inch thick, it would measure one-half of a foot, and so on. This has uniformly been the practice of the Treasury Department. This has continued at least since 1874. T. D. 1770, T. D. 3959, T. D. 5380. It has also been the ruling of the United States Board of General Appraisers, now the United States Customs Court. T. D. 27444, 11 Treas. Dec. 862. We referred to this practice in *United States* v. *Thomson*, 2 Ct. Cust. Appls. 76, T. D. 31630.

On first inspection of the two acts, it is observed that in said paragraph 401, the Congress made no allowance in the computation of board measure on account of planing, tonguing and grooving, and it is apparent that this proviso was thought necessary by the Congress—

[1] *Tariff Act of 1930.*

PAR. 401. Timber hewn, sided, or squared, otherwise than by sawing, and round timber used for spars or in building wharves; sawed lumber and timber not specially provided for; all the foregoing, if of fir, spruce, pine, hemlock, or larch, $1 per thousand feet, board measure, and in estimating board measure for the purposes of this paragraph no deduction shall be made on account of planing, tonguing, and grooving: *Provided,* That there shall be exempted from such duty boards, planks and deals of fir, spruce, pine, hemlock or larch, in the rough or not further manufactured than planed or dressed on one side, when imported from a country contiguous to the Continental United States, which country admits free of duty similar lumber imported from the United States.

*Revenue Act of 1932.*

SEC. 601. EXCISE TAXES ON CERTAIN ARTICLES.

(a) In addition to any other tax or duty imposed by law, there shall be imposed a tax as provided in subsection (c) on every article imported into the United States unless treaty provisions of the United States otherwise provide.

(b) The tax imposed under subsection (a) shall be levied, assessed, collected, and paid in the same manner as a duty imposed by the Tariff Act of 1930, and shall be treated for the purposes of all provisions of law relating to the customs revenue as a duty imposed by such Act, except that—

(1) the value on which such tax shall be based shall be the sum of (A) the dutiable value (under section 503 of such Act) of the article, plus (B) the customs duties, if any, imposed thereon under any provision of law;

(2) for the purposes of section 489 of such Act (relating to additional duties in certain cases of undervaluation) such tax shall not be considered an ad valorem rate of duty or a duty based upon or regulated in any manner by the value of the article, and for the purposes of section 336 of such Act (the so-called flexible tariff provision) such tax shall not be considered a duty;

(3) such tax shall not be imposed upon any article imported prior to the date on which this title takes effect;

(4) no drawback of such tax (except tax paid upon the importation of an article described in subsection (c) (4), (5), (6), or (7)) shall be allowed under section 313 (a), (b), or (f) of the Tariff Act of 1930 or any provision of law allowing a drawback of customs duties on articles manufactured or produced with the use of duty paid materials;

(5) such tax (except tax under subsection (c) (4) to (7), inclusive) shall be imposed in full notwithstanding any provision of law granting exemption from or reduction of duties to products of any possession of the United States; and for the purposes of taxes under subsection (c) (4) to (7), inclusive, the term "United States" includes Puerto Rico.

(c) There is hereby imposed upon the following articles sold in the United States by the manufacturer or producer, or imported into the United States, a tax at the rates hereinafter set forth, to be paid by the manufacturer, producer, or importer:

otherwise the provision would not have been made in said paragraph that in estimating board measure *"for purposes of this paragraph,"* [Italics ours] no deduction should be made for planing, tonguing and grooving. In drafting section 601 of the said revenue act, the Congress made no such provision. Obviously, when the said revenue act was being drafted, the Congress was well advised of the provisions of said paragraph 401. If it had desired to make a provision similar to that found in said paragraph 401, it seems reasonable to believe that it would not have used the term in said section 601 (c) (6), "per thousand feet, board measure" without further explanatory language, such as was used in said paragraph 401.

Government counsel assert, however, that the language found in said section 601 (b), namely, that—

the tax imposed under subsection (a) shall be levied, assessed, collected and paid in the same manner as a duty imposed by the Tariff Act of 1930, and shall be treated for the purposes of all provisions of law relating to the customs revenue as a duty imposed by such Act,

---

(1) Lubricating oils, 4 cents a gallon; but the tax on the articles described in this paragraph shall not apply with respect to the importation of such articles.

(2) Brewer's wort, 15 cents a gallon. Liquid malt, malt syrup, and malt extract, fluid, solid, or condensed, made from malted cereal grains in whole or in part, unless sold to a baker for use in baking or to a manufacturer or producer of malted milk, medicinal products, foods, cereal beverages, or textiles, for use in the manufacture or production of such products, 3 cents a pound. For the purposes of this paragraph liquid malt containing less than 15 per centum of solids by weight shall be taxable as brewer's wort.

(3) Grape concentrate, evaporated grape juice, and grape syrup (other than finished or fountain syrup), if containing more than 35 per centum of sugars by weight, 20 cents a gallon. No tax shall be imposed under this paragraph (A) upon any article which contains preservative sufficient to prevent fermentation when diluted, or (B) upon any article sold to a manufacturer or producer of food products or soft drinks for use in the manufacture or production of such products.

(4) Crude petroleum, ½ cent per gallon; fuel oil derived from petroleum, gas oil derived from petroleum, and all liquid derivatives of crude petroleum, except lubricating oil and gasoline or other motor fuel, ½ cent per gallon; gasoline or other motor fuel, 2½ cents per gallon; lubricating oil, 4 cents per gallon; paraffin and other petroleum wax products, 1 cent per pound. The tax on the articles described in this paragraph shall apply only with respect to the importation of such articles.

(5) Coal of all sizes, grades, and classifications-(except culm and duff), coke manufactured therefrom; and coal or coke briquettes, 10 cents per 100 pounds. The tax on the articles described in this paragraph shall apply only with respect to the importation of such articles, and shall not be imposed upon any such article if during the preceding calendar year the export of the articles described in this paragraph from the United States to the country from which such article is imported have been greater in quantity than the imports into the United States from such country of the articles described in this paragraph.

(6) Lumber, rough, or planed or dressed on one or more sides, except flooring made of maple (except Japanese maple), birch, and beech, $3 per thousand feet, board measure; but the tax on the articles described in this paragraph shall apply only with respect to the importation of such articles.

(7) Copper-bearing ores and concentrates and articles provided for in paragraph 316, 380, 381, 387, 1620, 1634, 1657, 1658, or 1659 of the Tariff Act of 1930, 4 cents per pound on the copper contained therein: *Provided,* That no tax under this paragraph shall be imposed on copper in any of the foregoing which is lost in metallurgical processes: *Provided further,* That ores or concentrates usable as a flux or sulphur reagent in copper smelting and/or converting and having a copper content of not more than 15 per centum, when imported for fluxing purposes, shall be admitted free of said tax in an aggregate amount of not to exceed in any one year 15,000 tons of copper content. All articles dutiable under the Tariff Act of 1930, not provided for heretofore in this paragraph, in which copper (including copper in alloys) is the component material of chief value, 3 cents per pound. All articles dutiable under the Tariff Act of 1930, not provided for heretofore in this paragraph, containing 4 per centum or more of copper by weight, 3 per centum ad valorem or ¾ of 1 cent per pound, whichever is the lower. The tax on the articles described in this paragraph shall apply only with respect to the importation of such articles. The Secretary is authorized to prescribe all necessary regulations for the enforcement of the provisions of this paragraph.

should be taken to mean that the special provision in said paragraph 401 should be carried forward and incorporated into the language of said section 601.

We are not prepared to agree with the Government in this contention for several reasons. It seems quite apparent that to levy, assess, collect, and pay a tax "in the same manner" should be held to apply to the administrative machinery employed in such levying, assessment, collection and payment of the tax, and not to the rate or amount of duty which is imposed.

It will be observed in referring to the various taxing provisions comprised within said section 601 (c) (1), (2), (3), (4), (5), (6), and (7) that they differ very much from those found in the provisions of the Tariff Act of 1930, relative to the same merchandise. For instance, it will be observed that paragraph (2) of subsection (c) which makes provision for a tax on malt extract and brewer's wort, and the like, has a special provision exempting bakers and producers of malted milk, medicinal products, and the like, from the tax, which exemption is not found in paragraph 805 of the said tariff act.

Again, paragraph (3) of the said subsection (c) provides for a tax on grape concentrate and similar products, which fixes the tax on the per centum of sugars contained by weight, whereas paragraph 806 (a) of said tariff act fixes the tax by the capability of producing alcohol. Said paragraph (4) fixes a tax upon imported petroleum and petroleum products. In paragraph 1733 of said tariff act, such products are free of duty, as is coal taxed by said paragraph (5), under paragraph 1650 of said act.

We have already indicated differences in rates of taxation between paragraph 401 of said tariff act and the language of paragraph (6) of subsection (c) of said revenue act. It should also be borne in mind that said tariff act contained paragraph 1803, which placed certain lumber, including sawed lumber and timber, not further manufactured than planed, tongued, and grooved, upon the free list.

Again, said paragraph (7) imposes a tax upon copper-bearing ores and concentrates upon the copper content, whereas paragraphs 316, 380, 381, 387, 1620, 1634, 1657, 1658, and 1659 of said tariff act, either impose duties upon different bases or free list the various articles upon which this tax provided in said paragraph (7) is imposed.

In view of these provisions, it seems quite evident that the Congress intended, by the passage of this act, to impose taxes upon the various articles mentioned in said section 601, upon entirely different bases than were in mind in the enactment of said Tariff Act of 1930, and that the rates fixed by said revenue act are not to be measured or computed by the provisions of the tax imposing provisions in said

Tariff Act of 1930. In connection with this, it is quite pertinent to observe that the language of said paragraph 401, in part, is, "in estimating board measure *for the purposes of this paragraph,*" [Italics ours,] thus confining the operation of the deduction provision to said paragraph 401, without extending it to every provision in that act or to any subsequent act enacted by the Congress.

If further light upon the true construction of said section 601 is required, it may be found in the report of the Ways and Means Committee of the House of Representatives, Report No. 708, 72nd Congress, 1st Session, pp. 34 and 35, submitting said revenue act to the House. A part of this report reads as follows:

* * * Customs duties (but not internal-revenue taxes collected on importation) are added to the dutiable value in order to give a basis for the tax corresponding to the domestic manufacturer's sale price. Provision is made for the collection of the tax in the same manner as a customs duty. This is believed to be the most certain and the simplest way to collect the tax on imports, since all imported articles are handled by the Customs Service for customs purposes. For the Internal Revenue Service to collect the tax either at the time of importation or after the articles enter the commerce of the country would occasion confusion and duplication of effort. This plan also makes applicable the regulations governing mail importations, the procedure governing the handling of passengers' baggage, the $100 exemption of returning residents, the warehousing and transportation-in-bond privileges, the right to review by the customs court of questions of law and valuation, and the usual entry procedure. The burden on the customs service will be lessened by the exemption from the tax of articles for further manufacture imported by licensed manufacturers and registered dealers, since a large proportion of imports, and especially of the duty-free goods, are in this class.

Provision is made that the heavy additional duties imposed under section 489 of the tariff act of 1930 in certain cases of undervaluation shall not apply by reason of the imposition of this tax to an article otherwise free of duty or subject only to a specific duty; that articles in warehouse on the effective date of the tax shall not be subjected to the tax; that drawback of the tax (except of the tax on imported oil) shall not be allowed on the exportation of articles manufactured or produced from imported articles, since the bill provides for credit or refund in such cases; and that treaties such as the Cuban reciprocity treaty, and provisions of law exempting products of the various insular possessions from duty, shall not be applicable with respect to the tax.

From this report it seems quite obvious that the Congress intended, by the language of subsection (b) of said section 601: "* * * shall be levied, assessed, collected, and paid in the same manner as a duty imposed by the Tariff Act of 1930," that said language should be applicable to the administrative procedure in assessing and collecting said tax, and that it was intended for the convenience of the Government rather than to apply to the rates or amounts of duty which were fixed by said revenue act.

Again, reference may be had to paragraph 1803 of the said tariff act, which was in full force and effect when such Revenue Act of 1932 was enacted, and which was as follows:

PAR. 1803. Wood:

(1) Timber hewn, sided, or squared, otherwise than by sawing, and round timber used for spars or in building wharves; sawed lumber and timber, not further manufactured than planed, and tongued and grooved; all the foregoing not specially provided for: *Provided*, That if there is imported into the United States any of the foregoing lumber, planed on one or more sides and tongued and grooved, manufactured in or exported from any country, dependency, province, or other subdivision of government which imposes a duty upon such lumber exported from the United States, the President may enter into negotiations with such country, dependency, province, or other subdivision of government to secure the removal of such duty, and if such duty is not removed he may by proclamation declare such failure of negotiations, and in such proclamation shall state the facts upon which his action is taken together with the rates imposed, and make declaration that like and equal rates shall be forthwith imposed as hereinafter provided; whereupon, and until such duty is removed, there shall be levied, collected, and paid upon such lumber, when imported directly or indirectly from such country, dependency, province, or other subdivision of government, a duty equal to the duty imposed by such country, dependency, province, or other subdivision of government upon such lumber imported from the United States.

(2) Logs; timber, round, unmanufactured; pulp woods; firewood, handle bolts, shingle bolts, gun blocks for gunstocks, rough hewn or sawed or planed on one side; and laths; all the foregoing not specially provided for.

Under that provision, lumber of certain kinds was free of duty. Yet, under said section 601 (c) (6) it was dutiable. Would anyone seriously contend that in computing the duty under said section upon lumber within the scope of said paragraph 1803, the collector could go to paragraph 401 of said tariff act to ascertain the basis of assessment of duty? In such cases, said paragraph 401 would have no application, but the dutiable provision would be found, alone, in said section 601 (c) (6).

That said paragraph 1803 was later in part repealed by the act of June 12, 1934, 48 Stat. 943, does not affect this conclusion.

We are of opinion that the measurement of lumber under said section 601 should be according to board measure, and that the trial court came to the right conclusion. Its judgment is *affirmed*.